ELLA BARNES, *Appellant*, v. R. A. WILLIS, INDIVIDUALLY AND AS ADMINISTRATOR OF ESTATE OF ALEXANDER BARNES, DECEASED. *Appellee.*

## Opinion Filed April 15, 1913.

1. In whatever form the impeachment of a sheriff's return is presented, it requires clear and convincing evidence to overcome the statements of a return under the sanction of official oath and responsibility.

2. Very clear and convincing evidence of fraud is required where the party charged with the fraud is dead.

3. Where a party has knowingly and willingly acquiesced in a decree of divorce for eleven years during which time the other party to the decree and the sheriff who made return of service of the process in the cause have both died, the decree of divorce will not be annulled for alleged failure to serve notice of the suit and for collusion between the sheriff and the deceased party in the matter of service of the process, where the proofs of the alleged want of service and of the collusion are not clear and convincing.

4. In proceedings to annul a decree of divorce where property rights in real estate would be affected by a decree of annulment, and the other party is dead, the heirs of such deceased person should be made parties.

Appealed from the Circuit Court for Jackson County.

Decree affirmed.

*D. L. McKinnon*, for Appellant;

*Smith & Davis*, for Appellee.

WHITFIELD, J.—In May, 1911, the appellant brought suit to annul a decree of divorce obtained against her by Alex-

ander Barnes, in 1900, and seeking restoration to rights she claims as the widow of Alexander Barnes, who died in January, 1911. The bill of complaint was dismissed and the complainant appealed.

It is alleged that the decree of divorce was obtained by fraud in that she was not aware of the divorce proceedings until after the decree of divorce was rendered. It is charged that the subpoena returned in the cause by the sheriff as having been served on her in person and a true copy thereof delivered to her was not served on her and she was in no wise made aware of the divorce proceedings; that she was ignorant and accepted support from her husband away from his home after he told her of the divorce, though she lived with him as his wife while the divorce proceedings were in progress, and for two months after the decree, when he told her of it and removed her from his home; that she did not bring suit to annul the divorce decree because of her fear that the decedent would kill her as he threatened to do if she brought suit to annul the divorce decree. The prayer is for an annulment of the divorce decree, for an accounting and for alimony and suit money. Temporary alimony and suit money were denied. The answer of the defendant denies the invalidity of the divorce decree, and denies fraud and collusion between the decedent and the sheriff in making service on the complainant here in the divorce proceedings brought against her by the decedent.

The subpoena addressed to Ella Barnes as defendant in the divorce proceedings bears date November 14th, 1899, and the return of the sheriff thereon states that it was served November 22, 1899, "by delivering a true copy thereof in the county of Jackson to the within named Ella Barnes, ........... and at the same time exhibiting and reading the original. J. A. Finlayson, Shff." Ella

Barnes, the complainant herein, testified that a small white man came to her home "and told me he come to notify me that Mr. Barnes entered suit against me for divorce; I told him he need not have done that, that all he needed to have done was to tell me and it would have been all right." She further testified that after the white man left she asked Barnes why he was suing her for divorce without letting her know about it, and "he said he had thought he wanted a divorce, but he had decided he did not want any divorce." "He said he was not going to get a divorce, and that I need not pay any attention to what was said by that man." This testimony as to communications with her deceased husband, though not objected to, was incompetent under the statute and should be disregarded. There is evidence by other witnesses that the decedent stated that he had procured the divorce without any notice being given to his wife, but this is refuted by the sheriff's return on the subpoena served on her, corroborated to some extent at least by her testimony that a small white man came to her house and told her Barnes had entered suit against her for divorce, though she stated no paper of any description was handed to her on that occasion. It is true she testified that she did not know the sheriff till after the divorce was obtained and that the small white man who notified her of the divorce proceedings was not the sheriff, yet she may be mistaken in the officer's identity. Evidence that the sheriff had been known to make a return of service in his own name when he had not in fact made the service in person was erroneously excluded, but such testimony taken with other evidence does not impeach the return made in this case.

The sheriff being dead, his official return on the subpoena corroborated somewhat by the complainant cannot be impeached so as to nullify a decree of divorce by tes-

timony that the deceased plaintiff in the divorce suit stated before his death that the defendant therein was not notified of the divorce proceedings. This is particularly so when the sheriff and the divorced husband are dead. In whatever form the impeachment of a sheriff's return is presented, it requires clear and convincing evidence to overcome the statements of a return under the sanction of official oath and responsibility. 18 Ency. Pl. & Pr. 984. The testimony and the letters and conduct of the divorced wife show she willingly acquiesced in the proceedings and in the divorce decree obtained in 1900, and was by agreement supported by the divorced husband away from his home, and she did not institute proceedings to annul the divorce decree till 1911. This delay and conduct estop her from complaining. 2 Nelson on Divorce, Sec. 1056.

The contention that this suit to annul the divorce decree was not brought during the life time of the former husband for fear of being killed by him, is not consistent with the letters addressed to him by the divorced wife, or with her conduct towards him. The alleged fact that he did not provide for her as he promised, does not affect the validity of the divorce decree. This is a hard case. It is apparent that the woman has been imposed on, but it cannot be said on this record that the chancellor erred in finding that the decree of divorce is not invalid, and in effect finding that the defendant therein was duly served with process and was not by fraud or force kept from protecting her legal rights. Very clear and convincing evidence of fraud is required where the party charged with the fraud is dead. 2 Nelson on Divorce, Sec. 1054.

After the lapse of eleven years, and after the death of the divorced husband and the sheriff, the showing made by the complainant is not such clear and convincing evi-

dence of fraud as to establish the invalidity of the decree of divorce against her rendered by a court of competent jurisdiction.

Real and personal property rights would be affected by an annulment of the divorce decree, but the heirs of the deceased divorced husband were not made parties here. See 2 Nelson on Divorce, Sec. 1054; Rawlins v. Rawlins, 18 Fla. 345; 7 Ency. Pl. & Pr. 146.

The decree is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND HOCKER, J. J., concur.