[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have filed an application for order in aid of execution dated July 5, 1990, an application for order to seize personal property dated August 2, 1990, a motion for sale of stock dated August 29, 1990, and an application for order to seize personal property dated December 13, 1990.
On or about January 2, 1990 the plaintiffs, Richard Rem, James Rem and Gabrielle Rem, d/b/a Rem Realty, commenced an action in the United States District Court for the Southern District of New York, against the defendant Joseph M. Caldrello, Sr. The defendant, Joseph M. Caldrello, Sr., was represented by counsel in that action. On March 21, 1990 United States District Judge Pierre Leval entered an order granting summary judgment on the first two counts of the plaintiff's complaint. On April 3, 1990 Judge Leval entered judgment against the defendant Joseph M. Caldrello, Sr. in the amount of Eight Hundred and Twenty Thousand Six Hundred Sixty-Two ($820,662.15) Dollars and Fifteen Cents. On April 16, 1990 the plaintiffs CT Page 8960 filed the New York judgment in the Judicial Court of New London, pursuant to Connecticut General Statutes Section 52-605. On June 5, 1990 the defendant was served with a notice regarding registration of the judgment and a copy of this notice was also mailed to the defendant. On May 10, 1990 this judgment was filed in the United States District Court in Hartford, Connecticut and on May 10, 1990 the defendant was personally served with a writ of execution issued by the United States District Court in Hartford regarding this judgment.
On August 3, 1990 Attorney Gregory M. McCauley and Attorney Steven A. Morelli, Philadelphia counsel and new counsel respectively for the defendant Joseph Caldrello, Sr. filed motions in the United States District Court of the Southern District of New York to:
1. Vacate the summary judgment;
2. Requesting a Stay of Execution of Judgment;
3. Dismissing the action; and
4. Granting sanctions
On April 15, 1991 the defendant filed an amended motion to vacate the judgment registered in the Superior Court of Connecticut, District of New London on April 16, 1990 on the following grounds:
1. The United States District Court, Southern District of New York lacked jurisdiction of the person of the defendant based on fraudulent service of process on the defendant, and the jurisdictional issue was not fully litigated before that court.
2. The judgment of the United States District Court, Southern District of New York, docketed on April 5, 1990, was a partial judgment on the First and Second Causes of Action in the complaint, and the U.S. District Court did not invoke F.R.Civ.P. Rule 54(b) to direct entry of a final judgment by making an express determination that there is no just reason for delay.
3. In registering the partial summary judgment in the Superior Court of Connecticut, District of New London, the plaintiff failed to comply with C.G.S. Section 52-605 (c) by mailing notice within thirty (30) days after the filing of the judgment and the certificate to the judgment debtor at his last-known address. Notice was not given until June 5, 1990.
These three issues raised by the defendant will be CT Page 8961 considered seriatim.
I. THE DEFENDANT'S CLAIM THAT THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK LACKED JURISDICTION OF THE PERSON OF THE DEFENDANT BASED ON FRAUDULENT SERVICE OF PROCESS ON THE DEFENDANT, AND THE JURISDICTIONAL ISSUE WAS NOT FULLY LITIGATED BEFORE THAT COURT.
The defendant makes the following argument in part in support of this claim:
 The jurisdiction issue has never been litigated in Federal District Court. The question was raised for the first time in defendant's motion to vacate filed in Federal District Court with an accompanying memorandum of law. Defendant responded in a reply memorandum. There was no testimony on that issue at Judge Leval's hearing on the Motion to Vacate on January 10, 1991, but only on the issue of whether Mr. Caldrello was properly represented by counsel and whether Gerard Rem was acting as agency for Rem Realty.
The court is not persuaded by that argument.
On June 27, 1991 the Honorable Pierre N. Leval, U.S.D.J., issued a memorandum and order regarding the defendant's motion to vacate the partial summary judgment granted the plaintiffs' first two causes of action (to collect a promissory note and loan) and the judgment granted as a sanction under rule 37 on plaintiffs' third cause of action (for fraudulent inducement of a loan).
In ruling on the defendant's claim of fraudulent service, Judge Leval stated as follows:
 Caldrello's second ground for vacating the summary judgment is his claim that he was fraudulently enticed into the jurisdiction so that he could be served. Caldrello claims that Gerard Rem lured him into New York to effect service by misleading Caldrello into believing that they would complete the Jaguar deal. (Caldrello Aff. par. 12.) Richard Lathrop and Harper Clifford testified that they thought the meeting in New York was to negotiate a deal, not to serve process.[1]
CT Page 8962
 In the first place, under the requirement of Fed.R.Civ.P. Rule 12(b), Caldrello waived the defense of lack of jurisdiction over the person by his failure to raise it in the responsive pleading or by prior motion. (Nor, as noted above, was this failure due to negligence by his attorneys.)
 In any event, defendant has failed to rebut plaintiffs' convincing evidence that defendant was not fraudulently enticed into the jurisdiction. Both Gerard Rem and his lawyer Arthur Lubell aver that Caldrello was told about the issue loan repayment and the threat of litigation. These witnesses also testified that defendant adjourned the original date of the meeting and of his own volition proposed that he would come into New York on January 2, 1990. Once at the meeting, Caldrello acknowledged his debt and unsuccessfully negotiated for more time to pay it. (Aff. of Gerard Rem, Arthur Lubell, and Richard Rem.) I credit the testimony offered by plaintiffs.
 Even if Caldrello believed (without fraud on plaintiffs' part) that he was coming into the jurisdiction to complete the deal, this would not present grounds for vacation under Rule 60(b)(4).[2] See Commercial Mutual Accident Co. v. Davis, 213 U.S. 245 (1909) (court upheld service when both parties expected adjustment of claim at meeting and service was made only after failure of a bona fide attempt to settle the controversy); Headly v. Noto, 256 N.Y.S.2d 750, 752, aff'd, 261 N.Y.S.2d 846 (1st Dept. 1965) (court upheld service upon defendant voluntarily within jurisdiction, regardless of deception used to effectuate service). Finally, I find that Caldrello had previously come into New York to negotiate with plaintiffs, which would provide yet another basis for asserting personal jurisdiction. (Richard Rem testimony at 113; Affidavit of Gerard Rem, par. 40-45.) See Hammett v. Hammett, 424 N.Y.S.2d 913 (1st Dept. 1980) (respondent was voluntarily in New York in that he came to New York from CT Page 8963 time to time on business and social occasions and generally spent time in New York on a regular basis).
 I find that Caldrello has failed to sustain his contention that plaintiffs procured his entry into New York by deceit.
It is clear that Judge Leval had before him the identical claim now raised by the defendant before this court in his amended motion to vacate judgment based on fraudulent service of process.
In Morabito v. Wachsman, 191 Conn. 92, 97 (1983) in discussing the issue of jurisdiction as it relates res judicata, the court stated in part as follows:
 "When a defendant appears in an action to object that the court has no jurisdiction over him and the court overrules the objection and renders judgment against him, the local law of the State where the judgment was rendered determines, subject to constitutional limitations, whether the parties are precluded from attacking the judgment collaterally on the ground that the court had no jurisdiction over the defendant." 1 Restatement (Second), Conflicts Section 96. In conformity with this view, we look to Nevada law to determine whether the defendant, having already litigated in Nevada the question of Nevada's jurisdiction over him, may now collaterally attack the judgments on the basis of jurisdiction.
More recently the court in Packer Plastics, Inc. v. Laundone, 214 Conn. 52, 56-57 (1990) stated in part as follows:
 This rule includes the proposition that lack of jurisdiction renders a foreign judgment void. Id., 704-705; see Nevada v. Hall, 440 U.S. 410, 421, 99 S.Ct. 1182, 59 L.Ed.2d 416, reh. denied, 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979); Thompson v. Whitman, 85 U.S. (18 Wall.) 457, 469, 21 L.Ed. 897 (1874). A party can therefore defend against the enforcement of a foreign judgment on the ground that the court that rendered the judgment lacked personal CT Page 8964 jurisdiction, unless the jurisdictional issue was fully litigated before the rendering court or the defending part waived the right to litigate the issue. Underwriters National Assurance Co. v. North Carolina Life Accident Health Ins. Guaranty Assn., supra, 706; Sherrer v. Sherrer, 334 U.S. 343, 350-52, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); Williams v. North Carolina, 325 U.S. 226, 229-30, 233, 65 S.Ct. 1092, 89 L.Ed. 1577, reh. denied, 325 U.S. 895, 65 S.Ct. 1560, 89 L.Ed. 2006
(1945); Morabito v. Wachsman, 191 Conn. 92, 96-99, 463 A.2d 593 (1983), 2 Restatement (Second), Judgments Section 81, comment (a) (1982); 1 Restatement (Second), Conflict of Laws Section 96 (1971).
 Furthermore, the party attacking the judgment bears the burden of proof regardless of whether the judgment at issue was rendered after a full trial on the merits or after an ex parte proceeding. See Williams v. North Carolina, supra, 230. (Emphasis provided)
As stated in Seaboard Surety Co. v. Waterbury,38 Conn. Sup. 468, 470-471 (1982):
 "Under Section 52-605 a foreign judgment other than one by default of appearance or confession that was duly registered with a Connecticut court could be executed upon locally. . . . The Section 52-605 proceeding, by which a foreign judgment that is not obtained by default of appearance or confession is treated the same as a judgment obtained in Connecticut, is a codification of the common-law of res judicata. . . . Under the common law, a final judgment that is rendered by a court of competent jurisdiction is conclusive of the rights of the parties in the same or any other judicial tribunal. . . . The effect of Section 52-605, therefore, is to establish a foreign judgment that is not obtained by a default in appearance or by confession as a domestic judgment that is conclusive of the defendant's indebtedness."
CT Page 8965
In this case, this court is being asked to relitigate the issue of fraudulent service of process on the defendant that has been adjudicated in a prior law suit between the identical parties. In both law suits the defendant claims fraudulent service of process. If the defendant had been successful in raising this claim in the United States District Court for the Southern District of New York, the judgment rendered against him would have been vacated. This court therefore concludes that based on the doctrine of res judicata, the defendant may not relitigate the issue of fraudulent service of process on him. See McCarthy v. Warden, 213 Conn. 289, 294-298 (1989).
II. THE DEFENDANT'S CLAIM THAT THE JUDGMENT OF THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK, USDCSD NY, DOCKETED ON APRIL 5, 1990, WAS A PARTIAL JUDGMENT ON THE FIRST AND SECOND CAUSES OF ACTION IN THE COMPLAINT, AND THE U.S. DISTRICT COURT DID NOT INVOKE F.R. CIV. P. RULE 54(b) TO DIRECT ENTRY OF A FINAL JUDGMENT BY MAKING AN EXPRESS DETERMINATION THAT THERE IS NO JUST REASON FOR DELAY.
Rule 54(b) of the Federal Rules of Civil Procedure provides as follows:
 JUDGMENT UPON MULTIPLE CLAIMS OR INVOLVING MULTIPLE PARTIES.
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but few than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. (Emphasis provided)
The parties are in dispute as to the interpretation of CT Page 8966 various orders entered by the Honorable Pierre N. Leval, United States District Judge, in this case. The plaintiff points to the following language in the memorandum and order dated March 21, 1990 of Judge Leval:
 "Plaintiff's motion for Summary Judgment on the first and second causes of action is unopposed, notwithstanding the court's order requiring the Defendant to answer by March 14, 1990. No justification appears for delaying the relief the Plaintiff's seek. (emphasis supplied)
 Plaintiff's motion papers establish that they are entitled to judgment on the first and second causes of action. Plaintiff's could be substantially prejudiced by delay. The motion for Summary Judgment is hereby granted."
The defendant on the other hand argues that the language of Judge Leval's memorandum and order dated March 21, 1990 to the effect that "no justification appears for delaying the relief the plaintiff's seek. . . Plaintiff's could be substantially prejudiced by delay," does not comply with the requirement of Federal Rules of Civil Procedure Rule 54(b) that the court may direct the entry of a final judgment as to fewer than all of the claims of the parties "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment".
The court is not persuaded by that argument.
A review of the records of this case in the United States District Court reveals that on April 5, 1990 the clerk docketed the April 3, 1990 judgment as a final judgment and it was that judgment which was registered in Connecticut on April 16, 1990. On May 9, 1990 the clerk in the United States District Court certified the judgment for registration in another district, with the notation that "no notice of appeal from the sais (sic) judgment has been filed in my office and time for the appeal commenced to run April 5, 1990, upon entry of the judgment." On June 15, 1990 Judge Leval entered the following memorandum of decision:
 On March 21, 1990, I granted summary judgment on two of the three causes of action plead in the complaint, and on April 3, 1990 I entered judgment on these two claims in the amount of $820,662.15. It has CT Page 8967 come to my attention that the Clerk mistakenly interpreted my April 3 order as entering final, rather than partial judgment, and has closed this case on the files.
 The Clerk is hereby directed to correct the docket sheet to indicate that the April 3 order (Document #11) awards judgment on the First and Second Causes of Action, but not on the Third Cause of Action.
The defendant in his supplemental memorandum of law dated August 8, 1991 argues in part as follows:
 The Defendant believes that the decision of the United States District Court Southern District of New York on the Defendant's Motion in that Court to Vacate the Judgment, supports his contention that the Judgment registered was not a final judgment.
 Judge Pierre Leval in his Memorandum and Order dated June 27, 1991 (Exhibit "A", attached) denied the Defendant's Motion to Vacate the Summary Judgment granted on Plaintiff's first two causes of action on March 21, 1990. He did, however, vacate the judgment as to the amount of attorney's fees granted on April 3, 1990 and invited the parties to "make submissions" on the amount of attorneys fees. It was the judgment of April 3, 1990, which was registered in Connecticut and that judgment has, in effect, been reopened on the issue of attorneys fees. There is, therefore, no longer a New York judgment for $820,662.15, of which $136,777.00 was for attorneys fees.
This court is satisfied that a fair reading of Judge Leval's "Memorandum and Order" dated March 21, 1990, his memorandum and order dated June 15, 1990 and his memorandum and order dated June 17, 1991 results in the conclusion that the "memorandum and order" of March 21, 1990 was a final judgment within the meaning of Federal Rules of Civil Procedure Rule 54(b). A review of Judge Leval's memorandum and order dated June 15, 1990 indicates that he only corrected the clerk's mistaken interpretation of his April 3, 1990 order to the extent of correcting the clerk's interpretation by showing that the April 3, 1990 order awarded final judgment on only the first and CT Page 8968 second causes of action but not on the third cause of action. However there was no mistake of the clerk docketing the April 3, 1990 memorandum and order as a final judgment. Further the memorandum and decision of Judge Leval of June 27, 1991 that extensively reviews all of the claims raised by the defendant clearly shows that the defendant was not making any claim concerning the finality of the April 3, 1990 order. This court therefore concludes that the order of Judge Leval of April 3, 1990 was a final order within the meaning of Rule 54(b) of the Federal Rules of Civil Procedure.
III. THE DEFENDANT'S CLAIM THAT IN REGISTERING THE PARTIAL SUMMARY JUDGMENT IN THE SUPERIOR COURT OF CONNECTICUT, DISTRICT OF NEW LONDON, THE PLAINTIFF FAILED TO COMPLY WITH CONNECTICUT GENERAL STATUTES SECTION 52-605 (c) BY MAILING NOTICE WITHIN THIRTY (30) DAYS AFTER THE FILING OF THE JUDGMENT AND THE CERTIFICATE TO THE JUDGMENT DEBTOR AT HIS LAST KNOWN ADDRESS.
As stated earlier, the New York judgment was registered in the Superior Court for the Judicial District of New London on April 16, 1990. Notice of that judgment was given to the defendant on June 5, 1990. Connecticut General Statutes Section 52-605 (c) provides as follows:
 Within thirty days after the filing of the judgment and the certificate, the judgment creditor shall mail notice of filing of the foreign judgment to the judgment debtor at his last known address. The proceeds of an execution shall not be distributed to the judgment creditor earlier than thirty days after filing of proof of service.
The plaintiff in his memorandum of law dated April 19, 1991 in addressing this issue states in part as follows:
 "The plaintiff concedes that notice to the defendant of the registration of the judgment in the Judicial District of New London occurred forty-nine (49) days after the registration of the judgment rather than thirty (30) days as required by 52-605. The registration of the judgment was instituted by the plaintiff individually prior to retaining counsel in the state of Connecticut on May 23, 1990."
The defendant in arguing this issue in his memorandum of law dated April 15, 1991 states in part as follows: CT Page 8969
 "It is true that the statute does not contain language which provides a sanction for failure to give timely notice. . . . If the tardy notice of registration to the defendant in this action were the only defect, this court would probably be justified in allowing the judgment to stand. But the notice problem is an added good reason in this case for the court to reopen the judgment and vacate it for lack of subject matter jurisdiction."
Neither party has cited to the court any cases either from Connecticut or from other states involving the affect of non-compliance with the notice provisions of the Uniform Enforcement of Foreign Judgment Act. An annotation of cases involving this issue is found in 31 ALR 4th 706, 717-723. Some courts have held that a foreign judgment is not entitled to registration where there has been insufficient compliance with the notice provisions. Other courts have held that notwithstanding the fact that the notice compliance has not been met that the judgment is entitled to registration. Section 3 of the Uniform Enforcement of Foreign Judgments (1964 Act) provides as follows:
Section 3. Notice of Filing
 (a) At the time of the filing of the foreign judgment, the judgment creditor or his lawyer shall make and file with the Clerk of Court an affidavit setting forth the name and last known post office address of the judgment debtor, and the judgment creditor.
 (b) Promptly upon the filing of the foreign judgment and the affidavit, the clerk shall mail notice of the filing of the foreign judgment ot the judgment debtor at the address given and shall make a note of the mailing in the docket. The notice shall include the name and post office address of the judgment creditor and the judgment creditor's lawyer, if any, in this state. In addition, the judgment creditor may mail a notice of the filing of the judgment to the judgment debtor and may file proof of mailing with the Clerk. Lack of mailing notice of filing by the Clerk shall not affect the enforcement proceedings if proof CT Page 8970 of mailing by the judgment creditor has been filed.
 ((c) No execution or other process for enforcement of a foreign judgment filed hereunder shall issue until ( ) days after the date of the judgment is filed.)
That section differs from Connecticut Statute 52-605
in that:
1. 52-605 does not require the clerk to give notice, and
2. 52-605 prohibits distribution of proceeds of an execution, as opposed to the issuance of the execution.
Section 52-605 (c) does provide in part that the proceeds of an execution shall not be distributed to the judgment creditor earlier than the 30 days after filing of proof of service. Section 52-605 (b) provides that a foreign judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of this state and may be enforced or satisfied in like manner. This court reads Section 52-605 (c) as requiring for the stay of execution of any proceeds for the thirty day period after filing of proof of service as a procedure whereby a judgment debtor can take advantage of Section 52-605 (b) to file defenses. The delay in the filing by a judgment creditor of the notice of mailing to the judgment debtor would have the effect of extending the stay of distributing the proceeds of any execution but would not invalidate the filing of the foreign judgment.
This court further agrees with the rationale in Miller v. Eloie Farms, Inc., 625 P.2d 332 (1981) in holding that the failure to follow the statutory notice procedures of the Uniform Enforcement of Foreign Judgments Act was not fatal to the enforcement of the foreign judgment where the judgment debtor was aware that the foreign judgment had been filed long before the judgment debtor attacked the validity of the foreign judgment on the grounds of failure to follow the statutory notice procedure.
Since this court has ruled against the defendant's motion to vacate the judgment registered in the Superior Court of Connecticut, Judicial District of New London on April 16, 1990, it is necessary to reach the merits of the plaintiffs' motion for sale of stock dated August 29, 1990 and application for order to seize personal property dated December 13, 1990. CT Page 8971
The plaintiffs' application for order to seize personal property is filed pursuant to Connecticut General Statutes Section 52-356a(2). The court also has before it an application for order in aid of execution filed by the plaintiff pursuant to Section 52-356b dated July 5, 1990 and an application for order to seize property filed by the plaintiff pursuant to Section 52-356a(2) dated August 2, 1990.
The court finds the following additional facts regarding the above reference application and motion for sale of stock.
On May 10, 1990 the New York judgment was filed in the United States District Court in Hartford, Connecticut. On May 10, 1990 the defendant was personally served with a writ of execution issued by the Federal District Court regarding this judgment. On June 12, 1990 the plaintiff filed an application for bank execution, exemption claim form and bank execution form with the office of the Chief Clerk of the Judicial District of New London. On July 5, 1990 the chief clerk of the Judicial District of New London signed the bank execution which was subsequently served on Connecticut National Bank and upon the judgment debtor, Joseph Caldrello, Sr. On October 9, 1990 Connecticut National Bank turned over the sum of Eight Hundred and Sixty-Nine ($869.18) dollars and eighteen cents in partial satisfaction of the defendant's obligation. The bank execution was issued in accordance with Section 52-367b. The defendant objects to the plaintiffs various applications and motion for sale of stock on two grounds: (A) the plaintiff has not complied with Section 52-356a(a)(1) in that no property execution has issued and (B) plaintiff has not complied with Section 52-356a(a)(2).
Section 52-356a(a)(1) provides in part as follows:
 On application of a judgment creditor or his attorney, stating that a judgment remains unsatisfied and the amount due thereon, and subject to the expiration of any stay of enforcement and expiration of any right of appeal, the clerk of the court in which the money judgment was rendered shall issue an execution pursuant to this section against the non-exempt personal property of the judgment debtor other than debts due from a banking institution or earnings.
The authority of a court to order the transfer of specified property is Section 52-356b(a) that provides in part CT Page 8972 as follows:
 If an execution is issued, the judgment creditor may apply to the court for an order in aid of the execution, directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) Possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.
A. THE DEFENDANT'S CLAIM OF NON-COMPLIANCE WITH SECTION 52-356a(a)(1).
The court makes an additional finding that the plaintiffs have never applied for nor has the clerk issued an execution pursuant to Section 52-356a(a)(1).
The plaintiff makes the following argument regarding this issue:
 The requirements set out in the statute are designed to provide the Defendant with notice of the Judgment, the original amount of the Judgment, the amount due thereon and to advise the defendant of the statutory protection available to claim exemptions.
 The statute requires that the ". . .clerk of the court in which the money Judgment was rendered shall issue an execution pursuant to this section. . ." (emphasis supplied). The writ of execution (Exhibit A) was issued by the clerk of the Federal District Court, the court in which the money Judgment was rendered. The Defendant has had adequate notice of the proceedings undertaken in an effort to obtain possession of his shares of stock in Caldrello Motor Group, Auto World, and T.N.M. Lathrop.
The court is not persuaded by that argument.
It is true that the defendant was served with a writ of execution on May 10, 1990 issued by the clerk of the Federal District Court in Connecticut. However this court reads Section 52-356b regarding the power of the court to order transfer of CT Page 8973 specified property to refer to an execution issued in accordance with Section 52-356a. There never has been an execution issued under the provisions of Section 52-356a. The plaintiff has filed the New York judgment in Connecticut and that judgment has therefore become a Connecticut judgment. Therefore the reference in Section 52-356a(a)(1) to the "clerk of the court in which the money judgment was rendered" issuing an execution refers to the clerk of the court in the Judicial District of New London and not the clerk of the Federal District Court. It therefore follows that since there has not been an execution issued in accordance with Section 52-356a the court does not have the power to order the transfer of specified property under the provision of Section 52-356b.
B. THE DEFENDANT'S CLAIM OF NON-COMPLIANCE WITH SECTION 52-356a(a)(2).
The plaintiff makes the following argument regarding this issue:
 Connecticut General Statutes section 52-356a(c) requires that third persons, in this instance Joseph Caldrello II, who are in possession of personal property of the Judgment debtor be served with two copies of the execution, required notices and claim forms. It is the Plaintiff's contention that the Defendant, Joseph Caldrello Sr., is the owner of the subject stock certificates, and was not advised that Joseph Caldrello, Sr. had transferred possession of the certificates until a deposition was had of the Defendant, Joseph Caldrello Sr., on October 15, 1990. Therefore, the requirement of the statute could not have been met on the date of the filing of the Plaintiff's motion for Sale of Stock dated August 29, 1990.
The court is not persuaded by that argument.
The court makes the following additional finding regarding this issue.
As a result of a deposition taken in New York on June 19, 1990 at which counsel for the plaintiff was present as well as one of the principals of the plaintiff namely Gerard Rem, the plaintiff became aware of the fact that Joseph Caldrello, II, the son of the defendant, was in possession of the shares of stock in question and claimed to have a lien on those shares of CT Page 8974 stock. Subsection 52-356a(a)(4)(C) requires the levying officer to serve a third party who is in possession of any debt owed to the defendant with two copies of the execution upon which the third party has twenty days to either forthwith deliver the property or claim an exemption from such delivery. The plaintiff has failed to comply with that provision since no levy has been made upon Joseph Caldrello, II as required by Section 52-356a(a)(4)(C).
This court has already found that the plaintiff had notice on June 19, 1990 of the interest of Joseph Caldrello, II in the shares of stock in question as a result of a New York deposition. The issue is whether the plaintiff must comply with Section 52-356a(a)(4)(c) in serving two copies of the property execution upon Joseph Caldrello, II prior to seeking the aid of the court for the transfer of specified property under the provision of Section 52-356b(a). This court holds that Section 52-356b(a) mandates that there must first be an execution issued in accordance with Section 52-356a before the judgment creditor may apply to the court for an order in aid of execution directed to a third person under Section 52-356b.
Accordingly the court issues the following orders:
1. The application for order in aid of execution dated July 5, 1990 filed pursuant to Section 52-356b is denied.
2. The application for order to seize personal property dated August 2, 1990 is denied.
3. The motion for sale of stock dated August 29, 1990 is denied. Further the order entered by this court regarding that motion dated November 19, 1990 is vacated.
4. The application for order to seize personal property dated December 13, 1990 is denied.